## FIRST DEPARTMENT, OCTOBER, 1962

## (October 2, 1962)

■ ROBERT A. RAVICH, Appellant, v. ETHEL S. PRATT, Respondent. ETHEL S. PRATT, Individually and on Behalf of Herself and All Other Members of Institute of Applied Biology, Inc., Respondent, v. ROBERT A. RAVICH et al., Appellants, and EMANUEL REVICI et al., Respondents.

APPEAL from an order of the Supreme Court at Special Term, entered December 23, 1960 in New York County, which denied a motion by plaintiff-appellant for summary judgment and also denied a cross motion by defendants-appellants for summary judgment dismissing the cross complaint.

Order, entered on December 23, 1960, affirmed, with $20 costs and disbursements to respondents.

BREITEL, J. (dissenting). I am constrained to dissent and vote to reverse and grant the motions for summary judgment made by plaintiff Robert A. Ravich and by the Ravich defendants in the cross action.

Despite the plethora of documents, affidavits and peripheral issues, the decisive question in the case is both simple and unitary. In this factional dispute for control of two charitable corporations, if there had been a complete disclosure by the Raviches before the agreements in suit were executed, the agreements are valid and there was no fraud.

Mr. Carlisle, the lawyer brought into the transactions by Mrs. Pratt, represented the Revici faction. He testified in deposition that a complete disclosure was made to him before the documents were executed. This is not disputed. The only residual question, then, is whether Mr. Carlisle represented Mrs. Pratt, which her present lawyers now deny, so that any communications to him were constructively communications to her.

Mr. Carlisle testified: "During the course of the negotiations and following the commencement of the action, I did act for Mrs. Pratt personally." He also held a general power of attorney from Mrs. Pratt. While Mr. Carlisle never billed Mrs. Pratt individually for the services he rendered, this does not detract from his unqualified assertion that he represented Mrs. Pratt personally. Thus, he testified: "Now I had represented Mrs. Pratt individually in other matters and at some course during the negotiations, as I testified on direct examination, I believe that I represented Mrs. Pratt individually when her individual affairs, as distinguished from her connection with the Institute, became a part of the negotiation."

To top it off, Mr. Carlisle refers to documents in his files which confirm his representation of Mrs. Pratt as an individual substantially before and continuing through the time of execution of the agreements in suit.

To these assertions by Mr. Carlisle there is no contradiction by Mrs. Pratt. She does squeeze out timidly some equivocal conclusions without reference to facts. The best she can say is " I did not suppose that he was acting for me personally, either in the litigation or in the negotiations, and he had no authority to make commitments for me." A general power of attorney, of course, is hardly consistent with the last expression.

Mr. Carlisle, even if he did not represent Mrs. Pratt personally, and that is not acceptable on any version of the proof, testified that he had advised Mrs. Pratt of the disclosures he had received. True, he could not say positively whether he had done so in person or on the telephone while she was in Canada. But he was unequivocal that disclosure was made to her before she signed the agreement.

Consequently, there is no issue of fact either with regard to disclosure to Mr. Carlisle as attorney for Mrs. Pratt, or with regard to his knowledge being communicated to Mrs. Pratt.

Botein, P. J., Valente, Stevens and Steuer, JJ., concur in decision; Breitel, J., dissents and votes to reverse and grant summary judgment.

Order, entered on December 23, 1960, affirmed, with $20 costs and disbursements to respondents.